```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
WILLIAM ULYSSES ROBINSON,     :
                              :
        Plaintiff,            :    No. 17-cv-9415 (NLH) (JS)
                              :
    v.                        :    OPINION
                              :
UNITED STATES OF AMERICA,     :
FEDERAL BUREAU OF PRISONS,    :
ATTORNEY GENERAL JEFF         :
SESSIONS, DOCTOR PETER SARKOS,:
RUBEN B. MORALES, MARYLIN     :
ANGUD, and DENISE RODRIGUEZ,  :
                              :
        Defendants.           :
_____:
```

APPEARANCE:
William Ulysses Robinson, No. 57982-037
FCI – Berlin
P.O. Box 9000
Berlin, NH 03570
    Plaintiff Pro se

HILLMAN, District Judge

Plaintiff William Ulysses Robinson, a prisoner previously incarcerated at FCI Fairton, in Fairton, New Jersey, seeks to bring an Eighth Amendment claim pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), as well as related state law claims, against the United States of America, the Federal Bureau of Prisons, former Attorney General Jeff Sessions (in his official capacity), Dr. Peter Sarkos, Ruben B. Morales, Marylin Angud, and Denise Rodriguez for actions that occurred while he was

incarcerated at FCI Fairton. See ECF No. 1.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will dismiss the Complaint without prejudice for failure to state a claim, with leave to amend, as to Defendants Sarkos, Morales, Angud, and Rodriguez and dismiss with prejudice Defendants United States of America, the Federal Bureau of Prisons, and former Attorney General Jeff Sessions as immune from suit. 28 U.S.C. § 1915(e)(2)(b)(ii).

BACKGROUND

In the Complaint, Plaintiff alleges that in June 2015, while he was playing baseball at FCI Fairton, he slid and injured his left wrist and experienced sharp and excoriating pain. ECF No. 1 at 4. On June 19, 2015, Plaintiff first went to sick call where he was examined by Defendant Rodriguez, his health care provider, who initially concluded that Plaintiff only sprained his wrist. Id. at 5, 10. Plaintiff requested an x-ray, and Donna Mazur, who is not a defendant in this action, told him that an x-ray would be scheduled for June 30, 2015.

Id. at 5, 11.  During this period of time, Plaintiff complained to Defendant Angud, who is the head of the FCI Fairton Medical Department about his ongoing pain.  Id. at 10.  He received the x-ray on June 30, 2015, which was conducted by non-defendant Donna Mazur, and on July 1, 2015, the x-ray revealed that Plaintiff had a fracture of the scaphoid bone in that wrist.  Id. at 5, 10.  Non-defendant Donna Mazur then told Plaintiff that he would be referred to Defendant Dr. Sarkos, who is an orthopedic surgeon employed at Inspira Health Network.  Id. at 1, 5, 10.  On July 7, 2015, Defendant Sarkos examined Plaintiff and recommended surgical repair of the fracture.  Id.  The Utilization Review Committee at FCI Fairton approved surgery for Plaintiff on July 10, 2015.  Id.

On August 14, 2015, Dr. Sarkos performed the recommended surgery and noted, "[r]ecommended follow up post op in 3-5 days.  Apply cast.  Scaphoid fracture repaired."  Id.  A few hours after surgery, Plaintiff experienced throbbing pain.  He went to the FCI Fairton Medical Department for that pain.  Id.  The staff recommended ibuprofen, but Plaintiff rejected that recommendation and told the staff that it would not be strong enough.  Id.  Staff then approved acetaminophen with codeine for Plaintiff's pain, but Plaintiff decided not to take the prescribed pain medication because he believed it would trigger

3

a negative effect based on his previous experiences.  Id.  In the past, when Plaintiff had been prescribed Percocet, Plaintiff became nauseous, incoherent, and vomited.  Id.  On August 18, 2015, Plaintiff had his follow up appointment with Defendant Dr. Sarkos.  Id.

About a month later, on September 15, 2015, Plaintiff had a reevaluation with Defendant Sarkos, who concluded that the range of motion was comparable with his age with normal joint stability and muscle power.  Id. at 6.  Plaintiff had another follow up appointment on October 20, 2015, during which time the doctor noted that Plaintiff was doing well and that in three weeks, he will have his cast removed and initiate therapy.  Id.  Plaintiff had another set of x-rays taken on November 11, 2015.  Id.  Then, on November 17, 2015 or November 20, 2015, Plaintiff's cast was removed, and he was instructed on appropriate physical therapy and was given a splint to use.  Id. at 6 (providing date as November 17), 11 (providing date as November 20).  After the cast was removed, Plaintiff and Defendant Sarkos noticed that Plaintiff was unable to bend his left wrist like he could before the surgery.  Id. at 11.  At this time, his x-rays were reviewed and demonstrated an appropriate union at the fracture site.  Id.

On February 3, 2016, Defendant Morales, at doctor in the

Fairton Medical Department, reviewed Plaintiff's x-rays and stated that he was not impressed with the healing.  Id.  On March 1, 2016, Defendant Sarkos examined Plaintiff and told him that his healing was going along perfectly and to continue doing his physical therapy exercises.  Id.  Plaintiff provides no further allegations as to whether the mobility of his left wrist continued to improve with his physical therapy exercises or if he performed the prescribed exercises.  He later describes his wrist as "paralyzed."

Plaintiff alleges that Defendant Sarkos proximately caused Plaintiff's wrist injury as a result of negligence.  Id. at 11.  Specifically, Plaintiff states that after surgery, his left wrist became inoperable and that Defendant Sarkos neglected Plaintiff's medical condition despite his numerous requests for therapy.  Id.

As to Defendants Morales, Angud, and Rodriguez, Plaintiff alleges that they knew his left hand is paralyzed but have "neglected the plaintiff medical need for therapy, second surgery, or any other remedies that would help to alleviate the Plaintiff's pain, suffering and abnormality" caused by his surgery.  Id. at 12.

STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding in forma pauperis. The Court must sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding in forma pauperis.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

DISCUSSION

The Court must dismiss the Complaint because it fails to state an Eighth Amendment medical claim pursuant to Bivens.

In order to state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "[T]o succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Some of the more common situations in which "deliberate indifference" has been found include when the prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment based on a non-medical reason, and prevents a prisoner from receiving needed or recommended medical treatment. Id.

First, as to Defendants the United States of America, the Federal Bureau of Prisons, and Attorney General Jeff Sessions, sued in his official capacity, the Court will dismiss with prejudice these defendants as immune from suit. "Absent a

waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). The same cloak of immunity also covers individuals sued in their official capacities, such as the Attorney General. See also Webb v. Desan, 250 F. App'x 468, 471 (3d Cir. 2007) (noting that the United States and individuals sued in their official capacities are immune from Bivens claims). The Court will thus dismiss with prejudice the United States of America, the Federal Bureau of Prisons, and the Attorney General.[1]

Second, as to Defendant Dr. Sarkos, any Eighth Amendment medical claims against him is dismissed without prejudice at this time because, based on the allegations of the Complaint, it does not appear that he is a federal actor subject to Bivens liability. See Robertson v. Exec. Dir. Brain Inst. Geisinger Med. Ctr., 578 F. App'x 76, 77 (3d Cir. 2014); Pinet v. Zickefoose, No. 10-2347, 2013 WL 6734241, at *8 (D.N.J. Dec. 19, 2013) (relying on Minneci v. Pollard, 565 U.S. 118 (2012), and finding that an employee at a private hospital is not liable under Bivens). In the Complaint, Plaintiff does not allege that

---

[1] The Court notes that the Complaint contains no allegations or claims against these Defendants, although they are included in the caption of the Complaint.

8

Plaintiff is a staff member of FCI Fairton or otherwise a federal employee.  Instead, Plaintiff alleges that Dr. Sarkos is employed at an off-site, private medical facility, Inspira Health Network, in Vineland, New Jersey, which is also where Plaintiff's surgery occurred.  See ECF No. 1 at 1, 10.  Because it does not appear from the face of the Complaint that Defendant Sarkos is a federal actor subject to Bivens liability, he will be dismissed without prejudice.

Third, as to the remaining Defendants Morales, Angud, and Rodriguez, Plaintiff fails to state a claim against each of them.  The only allegation against Defendant Rodriguez is that he initially examined Plaintiff after the injury and concluded that Plaintiff only sprained his wrist.  See ECF No. 1 at 5, 10. On that same day, however, Plaintiff was also scheduled for an x-ray of his wrist.  See id. at 5.  Plaintiff fails to allege or explain how an initial conclusion of a sprained wrist without the benefit of an x-ray, when such x-ray was scheduled for a future date, is deliberate indifference.  Likewise, the only allegation against Defendant Angud is that Plaintiff complained to Defendant Angud about his pain.  But Plaintiff does not allege Defendant Angud somehow prevented Plaintiff from receiving medical care or prevented him from receiving pain medication.  Finally, as to Defendant Morales, the only

9

allegation is that Defendant Morales states that he was not impressed with the healing of Plaintiff's wrist after reviewing an x-ray.  See id. at 6.  Yet, after Defendant Morales' statement, Plaintiff received repeated follow up care with an orthopedic surgeon who assessed the healing of the fracture as perfect and recommended continued physical therapy.

There is simply no allegation that could support the conclusion that any of these Defendants were deliberately indifferent to Plaintiff's wrist injury.  To the contrary, Plaintiff received an examination by Defendant Rodriguez on the first day he decided to go to sick call for his wrist.  Then, on that same day, he was scheduled for an x-ray appointment, which occurred ten days later.  A day after his x-ray, he was referred to an orthopedic surgeon, whom Plaintiff saw six days after his referral.  Three days after Defendant Sarkos recommended surgery, the Utilization Review Committee at FCI Fairton approved it.  After surgery, Plaintiff was provided with pain medication, which he admits he declined to take because he was concerned about the side effects, and he received regular post-operative care including x-rays and follow up visits with Defendant Sarkos, the orthopedic surgeon, who determined that Plaintiff's healing was proceeding perfectly and directed Plaintiff to continue his physical therapy exercises.  No

plausible claim arises from Plaintiff's factual allegations that any of the FCI Fairton defendants were deliberately indifferent to his medical needs, and therefore, Plaintiff has failed to state a claim against them.

Finally, Plaintiff also appears to plead state law malpractice claims.  <u>See</u> ECF No. 1 at 12.  To the extent that he does, the Court declines to exercise supplemental jurisdiction over them in light of the dismissal of the federal claim upon which jurisdiction is based.[2]  <u>See</u> 28 U.S.C. § 1367(c)(3).

Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915] should receive leave to amend unless amendment would be inequitable or futile."  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 114 (3d Cir. 2002).  The Court will grant leave to amend in order to allow Plaintiff an opportunity to cure his pleading deficiencies as described <u>supra</u>.

CONCLUSION

For the reasons stated above, the Complaint is dismissed without prejudice for failure to state a claim, with leave to amend granted.  An appropriate order follows.

Dated: <u>December 21, 2018</u>      <u>s/ Noel L. Hillman</u>
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.

---

[2] If Plaintiff files an amended complaint that alleges a cognizable federal claim, the Court will exercise supplemental jurisdiction over any state law claim that proceeds.